UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISHA RUSSELL, individually and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Maryland corporation; and DOES 2-20, inclusive,<br><br>  Defendants. | Case No.: 17-cv-0672-JLS-WVG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>(ECF No. 8) |

Presently before the Court is Defendant Government Employees Insurance Company's ("GEICO") Notice of Motion ("MTD Notice"), (ECF No. 8), and Motion to Dismiss Plaintiff's First Amended Complaint ("MTD"), (ECF No. 8-1); Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint ("Opp'n"), (ECF No. 16); and Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint ("Reply"), (ECF No. 17). Having considered the parties' arguments and the law, the Court rules as follows.

# BACKGROUND

Plaintiff Marisha Russell asserts that Defendant GEICO, her former employer, retained overtime wages and other benefits in violation of the California Labor Code, the California Business and Professions Code Section 17200 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.* ("FLSA"). (Notice of Removal, Ex. N ("FAC") 1–2, ECF No. 1.) Plaintiff brings her claims both individually and on behalf of all other allegedly aggrieved employees under California's Private Attorneys General Act ("PAGA") and as a collective action under 29 U.S.C. § 216(b). (*Id.* at 4–5.)

Defendant, a national insurance provider, employed Plaintiff in a non-exempt, hourly clerical position from April 18, 2011 through December 1, 2014. (*Id.* at 8.) During her employment, Plaintiff was at times required to work overtime hours in excess of eight hours per workday and/or forty hours per week. (*Id.* at 10.) Plaintiff received compensation in two forms: (1) an hourly wage and (2) an annual bonus through Defendant's "Revised Profit Sharing Plan for the Employees of the Government Employees Companies" (the "PSP"). (*Id.* at 9.)

The terms of the PSP identify—among other things—how the Defendant makes contributions to the PSP fund and how the Defendant calculates and allocates the amount of each employee's annual PSP bonus from the fund. (*Id.* at 9–10, Ex. A ("Ex. A").) Defendant's companies' contributions to the fund come from each calendar year's ("Plan Year's") net profits and the contribution amount is "determined by the Board in its sole discretion." (Ex. A ¶ 5.1(a); FAC 9.) Defendant's companies then allocate funds to each of their "Planning Centers" (i.e., organizational units within the companies) based on rankings determined by a numerical value "assigned annually to each Planning Center by the President of the Corporation acting on the advice of the Corporation's senior management." (Ex. A ¶ 5.2; FAC 9.) The total bonus amount that each Planning Center receives is based on a ratio of "(i) each Planning Center's [ranking] multiplied by the total earnings of eligible employees in that Planning Center to (ii) the sum of the products of each Planning Center's [ranking] and the total earnings of all eligible participants in such Planning

Center." (FAC 9–10; Ex. A ¶ 5.2.) Defendant then apportions an annual bonus to each eligible employee within a Planning Center as "a proportionate share of the Planning Center's bonus money, calculated as the ratio of (i) the employee's earnings during the Plan Year to (ii) the total earnings of all eligible employees within the Planning Center." (FAC 10; Ex. A ¶ 5.2.)

The employee's earnings in the above apportionment include "all regular or basic pay, overtime pay, and shift differential earned during the Plan Year, and all bonuses earned during the Plan Year except the profit sharing payments themselves." (FAC 10; Ex. A ¶ 1.9.) In order for an employee to receive the PSP bonus, the employee is "required to remain employed until the payout date of the bonus." (FAC 10; Ex. A ¶ 5.1.) The annual payout date for the bonus is "typically late in the February following the Plan Year." (FAC 11.) If an employee does not remain employed with Defendant until the payout date, the employee "forfeits his or her bonus – even if the employee worked the entire Plan Year (through December 31) and was otherwise eligible for a bonus." (*Id.*)

Plaintiff believes that Defendant's administration of its compensation mechanisms is legally flawed and thus filed this action alleging claims that Defendant (1) failed to pay overtime wages pursuant to California Labor Code Section 1194; (2) failed to timely pay wages for all hours worked pursuant to California Labor Code sections 204 and 1194; (3) failed to provide accurate itemized wage statements pursuant to California Labor Code section 226; (4) failed to pay all wages due and owed upon termination pursuant to California Labor Code sections 201, 202, and 203; (5) violated California Labor Code sections 201, 202, 203, 204, 226, and 1194, entitling Plaintiff to recover civil penalties pursuant to California Labor Code section 2698, *et seq.*; (6) violated California Business and Professions Code section 17200, *et seq.*; and (7) violated relevant provisions of the FLSA. (*Id.* at 12–19.) Additionally, Plaintiff seeks a declaratory judgment that Defendant's PSP bonuses were "not excludable from the regular rate of pay" as percentage bonuses and that Defendant's administration of its PSP bonus resulted in "underpayment of overtime wages." (*Id.* at 19–20.)

3

Plaintiff originally filed this action on December 23, 2015—seeking only state-law–based relief—in San Diego Superior Court. Plaintiff amended her complaint on February 16, 2017, adding new claims under the FLSA and thus setting the stage for Defendant's April 3, 2017 removal to this Court on the basis of federal question jurisdiction. (ECF No. 1.) Shortly after removal, Defendant filed the instant Motion to Dismiss.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*,

17-cv-0672-JLS-WVG

550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendant's primary argument is that Plaintiff's first, second, fourth, and seventh causes of action should be dismissed because the PSP bonus was "paid as a percentage of both overtime and regular wages" and therefore "as a matter of law, Plaintiff has already been paid all wages owed her." (MTD Notice 2–3.) This necessarily also means, as Defendant further argues, that Plaintiff's remaining causes of action should be dismissed because they are "wholly derivative of her causes of action for unpaid wages and cannot survive their dismissal." (*Id.*) Accordingly, because Defendant's argument that it properly excluded the PSP bonus when calculating Plaintiff's regular rate of pay—and therefore her corresponding overtime pay rate as well—has the potential to dispose all of Plaintiff's causes of action, the Court addresses that argument first.

**I.     Whether Defendant Properly Calculated Plaintiff's Regular Rate of Pay**

The threshold issue in each of Plaintiff's causes of action is whether Defendant was required to include the PSP bonus when calculating Plaintiff's regular rate of pay to determine overtime pay. This issue in large part turns on the distinction between two competing types of bonuses—percentage bonuses as defined by 29 C.F.R. § 778.210 and as distinguished by 29 C.F.R. § 778.503, and discretionary bonuses as defined by 29 C.F.R.

5

17-cv-0672-JLS-WVG

§ 778.211. Defendant argues that its calculations were proper because it "pays overtime via percentage bonuses as an <u>alternative</u> method of paying overtime, which renders recomputation of the regular rate of pay unnecessary because a percentage bonus by definition automatically includes all overtime due on the bonus." (Reply 1 (emphasis in original); MTD 4–9.) Conversely, Plaintiff argues that the requirement that employees remain employed through the PSP-bonus payout date disqualifies the bonus from being a "<u>bona fide</u> percentage bonus plan," and therefore Defendant should have included the bonus payment when calculating Plaintiff's regular rate of pay for determining overtime pay. (Opp'n 1–2 (emphasis in original).)

Both the FLSA and California law require that an employee be compensated with overtime pay "at a rate not less than one and one-half times" the employee's regular rate for hours worked in excess of forty in a week. 29 U.S.C. § 207(a); Cal. Lab. Code § 510 (articulating same and additionally requiring overtime pay for "work in excess of eight hours in one workday"). However, absent controlling or conflicting California law, "California follows the federal standard for purposes of determining, under the Labor Code, what constitutes an employee's regular pay subject to an overtime rate." *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 242 n.14 (2007) (citing *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 902 (2005)). Accordingly, the FLSA here controls the Court's analysis.

Under the FLSA, an employee's "regular rate" includes "all remuneration for employment paid to . . . the employee," unless the remuneration falls under one of eight statutory exceptions. 29 U.S.C. § 207(e). Generally, discretionary bonuses and payments made by an employer pursuant to profit-sharing plans fall under excludable payments. *See* 29 C.F.R. § 778.208. However, discretionary bonuses that "are announced to employees to induce them . . . to remain with the firm" and are "contingent upon the employee's continuing in employment until the time the payment is to be made" "must be included in the regular rate of pay." *Id.* § 778.211(c). Bonus payments that do not qualify as an

///

exception "must be totaled in addition to the regular earnings of an employee" before a regular hourly rate of pay can be determined. *Id.* § 778.208.

Plaintiff maintains that when Defendant calculated Plaintiff's regular rate of pay to determine overtime pay, Defendant violated Section 778.211 by improperly excluding the PSP bonus and only including Plaintiff's hourly wages. (FAC 9–10.) This is allegedly because Defendant required Plaintiff "to remain employed until the payout date of the bonus" to receive the PSP bonus. (FAC 10–11 (discussing 29 C.F.R. §§ 778.210, .211.)[1] However, Defendant argues that "Section 778.211 does not apply to percentage bonuses" and "[a] percentage bonus under Section 778.210 is valid regardless of whether it is contingent upon an employee's continuing employment . . . ." (MTD 7.) Accordingly, the Court must address whether Defendant's administration of the PSP bonus was properly excluded pursuant to controlling federal regulations when calculating Plaintiff's regular rate of pay.

### A. *Whether the PSP Is a Valid Percentage Bonus*

Although the FLSA requires bonus-based recomputation of an employee's regular rate of pay for calculating overtime pay, the employer need not necessarily make a separate payment pursuant to the recomputation: "In some instances the contract or plan for the payment of a bonus may also provide for the simultaneous payment of overtime compensation" of a nondiscretionary bonus as a "percentage bonus." 29 C.F.R. § 778.210. Such a "percentage bonus" provides employees—in one payment—with both a bonus and accrued overtime stemming from what would otherwise derive from the bonus-based recomputation. *See id.* In this way, a valid percentage bonus is accomplished by simply multiplying the employee's total earnings, which include the employee's straight-time earnings and overtime earnings, by a fixed percentage. *Compare id.*, *with id.* § 778.503 (explaining distinction between valid percentage bonuses and "pseudo" percentage

---

[1] The Code of Federal Regulations treats discretionary and nondiscretionary bonuses differently. Because Plaintiff and Defendant both consider the PSP bonus to be nondiscretionary, (FAC 9; MTD 1), the Court analyzes the PSP bonus within the context of the nondiscretionary-bonus framework.

bonuses, which "usually decrease in amount in direct proportion to [an] increase in the number of hours worked in a week in excess of [forty]" such that an employee is always paid the same amount regardless of actual overtime worked). However, a "true bonus based on a percentage of total wages" must be paid unconditionally so that the "bonus increases both straight time and overtime wages by the same percentage, and thereby includes proper overtime compensation as an arithmetic fact." 29 C.F.R. § 778.503.

In the present case, Plaintiff argues in its Opposition that the PSP bonus does not qualify as a bona fide percentage bonus for three reasons: "(1) the laws' plain language disqualifies GEICO's plan; (2) the purpose and effect of GEICO's bonuses are inconsistent with the overtime laws and this 'percentage bonus' rule; and (3) the application of the percentage bonus rule in other contexts reveals the inapplicability to GEICO's plan." (Opp'n 6.) The Court addresses each argument in turn.

### *(i)  The Plain Language on Percentage Bonus Qualifications*

Plaintiff first argues that the PSP bonus does not qualify as a percentage bonus under Section 778.210 because the language "paid unconditionally" in Section 778.503 means—according to Plaintiff—that overtime pay cannot be subject to any conditions subsequent.[2] (Opp'n 7.) However, Plaintiff's interpretations of Sections 778.210 and 778.503 are not consistent with the Department of Labor's ("DOL") persuasive interpretation.

Specifically, the Department of Labor ("DOL") periodically issues opinion letters to provide guidance on FLSA regulations. And in our Circuit DOL opinion letters, although "not binding on the court if . . . plainly erroneous or . . . inconsistent with the regulations they interpret[,]" are otherwise "normally entitled to a high degree of deference . . . ." *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998). In the present case, the

///

---

[2] Defendant argues that "Russell's attempt to raise th[is] argument for the first time in her Opposition is improper" given that Plaintiff's FAC "never alleges that the PSP constitutes a pseudo-percentage bonus" pursuant to Section 778.503. (Reply 7 n.4.) However, Plaintiff's argument is properly raised—it revolves around and directly informs Plaintiff's allegation that the PSP is not a valid percentage bonus under Section 778.210 because of the PSP's conditional requirements.

DOL previously advised as follows in a November 8, 1985 opinion letter on percentage bonuses:

> [W]here an employer's payments under a bonus plan, such as a longevity bonus [contingent until the time the payment is to be made], are based upon a percentage of the total earnings of a participating employee, the payments may be excluded from the regular rate of pay if the . . . bonus is paid as a predetermined percentage of the employee's total compensation, including straight time, overtime, bonuses, and commission, [because] the overtime pay due under FLSA is automatically included and no additional computation or payment of overtime is required.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Regular Rate/Lump Sums/Longevity Payments Under the FLSA (Nov. 8, 1985), 1985 WL 1087350, at *1. This letter therefore specifically sanctions longevity bonuses as ones that "may be excluded from the regular rate of pay" when based upon a percentage of the employee's total earnings. *Id.*

And although the DOL's opinion letter is not binding on this Court, *Imada*, 138 F.3d at 1297, Plaintiff fails to cite any authority in support of her contrary interpretation of the requirements for a valid percentage bonus under Sections 778.210 and 778.503. Against this backdrop, and according the DOL opinion letter its due deference, the Court therefore agrees that an otherwise-valid percentage bonus is not rendered invalid merely due to contingency. *See, e.g.*, *Wash. State Health Facilities, Ass'n v. Wash., Dep't of Soc. & Health Servs.*, 879 F.2d 677, 681 (9th Cir. 1989) ("An agency's interpretation of its own regulations is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation.").[3] Here, the PSP bonus is nondiscretionary, (*supra* note 1), and the bonus was paid as a percentage of Plaintiff's

---

[3] In her Opposition, Plaintiff states that the "percentage bonus rule and its rationale" from *Chavez v. Converse, Inc.*, No. 15-CV-03746 NC, 2016 WL 4398374, at *1 (N.D. Cal. Aug. 18, 2016), "is the rule that his [sic] court should adopt." (Opp'n 12.) However, the rule and rationale from *Chavez* was that an employer "may provide bonuses based on a percentage of total earnings and fully discretionary merit awards without recalculating the regular rate of pay." 2016 WL 4398374, at *3.

straight-time and overtime wages earned during the previous calendar year. Therefore, the Court finds that the PSP's requirement that eligible employees remain employed through the payout date to receive the bonus does not disqualify the PSP bonus as a bona fide percentage bonus under the language of Sections 778.210 and 778.503.[4]

However, Plaintiff in a later Section of her Opposition also argues that the PSP bonus should not qualify as a valid percentage bonus because Defendant's limited documentation describing the PSP bonus program failed to mention the PSP "bonus[] being computed 'as a percentage of the eligible employees' earnings.'" (Opp'n 15–16; FAC 11.) Thus, Plaintiff argues that Defendant violated Section 778.210 by not setting forth the bonus "in a 'contract or plan . . . made prior to the performance of the services [for which the percentage bonus is paid].'" (Opp'n 15 (alterations in original) (quoting 29 C.F.R. § 778.210).) In response, Defendant argues that Plaintiff's interpretation of a "notice requirement" in Section 778.210 is mistaken because "[t]he language [Plaintiff] cite[s] is taken from an example illustrating how a percentage bonus might work, and not from any requirement found in the regulation itself." (MTD 8; Reply 10.) Instead, Defendant argues that the language in Section 778.210 does not limit percentage bonuses on noticed-based terms but instead merely contrasts that of Section 778.211, which <u>does</u> limit <u>discretionary</u> bonuses on notice-based terms. (*See* MTD 8 (noting that Section 778.211 "explains that in order for a bonus to be considered discretionary such that it may be excluded from the regular rate, the bonus 'must not be paid "pursuant to any prior contract, agreement, or promise"'" (quoting 29 C.F.R. § 778.211(c)).) The Court agrees with Defendant.

In authorizing percentage bonuses, Section 778.210 states that "[i]n some instances . . . the contract or plan for the payment of a bonus may also provide for the simultaneous payment of overtime compensation due on the bonus." Section 778.210 then identifies an

---

[4] It therefore naturally follows that the difference in the length of time between the Plan Year (January of Year 1 through December 31 of the same year) and the PSP bonus payout date (January of Year 1 through February of Year 2) also does not disqualify the PSP bonus as a bona fide percentage bonus under the language of Sections 778.210 and 778.503.

10

example of such an instance: "a contract made prior to the performance of services may provide for the payment of additional compensation in the way of a bonus at the rate of 10 percent of the employee's straight-time earnings, and 10 percent of his overtime earnings." But this plain language only requires that a bonus be administered as a percentage against total earnings (comprising both straight time and overtime) in order for the bonus to qualify as a bona fide percentage bonus. Section 778.210 contains no limiting language similar to Section 778.211's command that for a discretionary bonus to be valid it "<u>must</u> not be paid 'pursuant to any prior contract, agreement, or promise.'" 29 C.F.R. § 778.211 (emphasis added) (quoting 29 U.S.C. § 207(e)). And in the present case, Defendant's PSP bonus plan complied with the plain language of Section 778.210 by providing for the simultaneous payment of overtime compensation due on the bonus; and Plaintiff received the terms of the plan prior to the performance of services. Moreover, Plaintiff offers no legal authority supporting its position that the Court should read a notice requirement in to Section 778.210. Accordingly, Plaintiff's notice requirement argument fails.

*(ii)* *The Purpose and Effect of Overtime Laws*

Plaintiff next argues that the PSP bonus should be disqualified as a percentage bonus because it was "used to reward future performance and save the employer money" and "[b]onus plans containing these additional purposes and conditions do not qualify for exclusion from the regular pay." (Opp'n 8–9.) In support, Plaintiff points to Section 778.210's admonition that "overtime requirements are <u>not</u> satisfied 'where [a percentage bonus] is used as a device to evade the overtime requirements of the Act rather than to provide actual overtime compensation, as described in §§ 778.502 and 778.503.'" (Opp'n 8 (emphasis in original).) However, Plaintiff's purpose-and-effect argument hinges on the same flawed premise addressed above, *supra* Section I.A.i, and the Court again concludes that the PSP here at issue was not disqualified from being a true percentage bonus merely due to contingency or lack of notice. Moreover, neither of Plaintiff's cited cases in support of her purpose-and-effect argument, (Opp'n 8 n.5), involve either percentage bonuses or Section 778.210. *See Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976–78 (8th Cir. 2006)

11

17-cv-0672-JLS-WVG

(finding the city's buyback of firefighters' sick leave days via a lump sum payment equal to seventy-five percent of the firefighters' regular hourly pay constituted a bonus requiring recomputation of their regular rate of pay under 29 U.S.C. § 207(e)); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 38–41 (1944) (involving an employer's "split-day plan" that separated an employee's hours into two groups and assigned an arbitrarily different hourly rate of pay to each group specifically to avoid paying overtime under the newly effective FLSA on any hours worked in excess of forty). Accordingly, Plaintiff's argument here fails.

### (iii) The Application of the Percentage Bonus Rule in Other Contexts

Plaintiff's third argument why the PSP bonus does not qualify as a bona fide percentage bonus is again policy based: that "GEICO's interpretation [of the requirements for a percentage bonus] allows all sorts of duplicitous payment structures under the guise of payment on a percentage of income." (Opp'n 9.) In support of her argument, Plaintiff creates two hypotheticals allegedly demonstrating a comparable circumvention of overtime obligations. (Opp'n 9–10.) However, Plaintiff's hypotheticals only further highlight her misinterpretation of Sections 778.210 and 778.503.

In Plaintiff's first hypothetical, "a company provides a conditional 10% bonus on the first year's earnings, payable only if the employee finishes the second year." (Opp'n 9.) Plaintiff argues that because "the bonus actually incentivizes and compensates for performance during the second year," it "escapes inclusion in either year's regular rate because it is a percentage of the first year's earnings." (*Id.* (emphasis in original).)[5] Plaintiff's hypothetical bonus appears to be a longevity bonus and, pursuant to the DOL's November 8, 1985 opinion letter specifically referencing longevity bonuses, longevity bonuses "may be excluded from the regular rate of pay" when based upon a percentage of the employee's total earnings. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on

---

[5] Plaintiff fails to identify whether the hypothetical bonus is nondiscretionary, but, for the sake of comparing this bonus to Defendant's PSP bonus, the Court assumes it is nondiscretionary.

Regular Rate/Lump Sums/Longevity Payments Under the FLSA (Nov. 8, 1985), 1985 WL 1087350, at *1; *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA (Aug. 26, 2005), 2005 WL 3308593, at *1 (determining to be valid a nondiscretionary incentive bonus paid in February and "dependent upon the company's performance during the previous calendar year" when the bonus was computed "as a percentage of each employee's straight time and overtime wages earned during the previous calendar year"). However, unlike the PSP bonus and the bonuses at issue in the 1985 and 2005 opinion letters, Plaintiff's hypothetical bonus is not paid out in the year following the immediately preceding calendar year, and thus, its alleged duplicity is not instructive on the validity of the percentage bonus here at issue. Moreover, although Plaintiff states its first hypothetical bonus is "nearly identical" to the bonus plan in *Jacksonville Paper Co. v. McComb*, 167 F.2d 448 (5th Cir. 1948), (Opp'n 9 n.6), the *Jacksonville Paper* bonus is, in fact, readily distinguishable because it was payable in twelve installments over the succeeding year, was "not promised in advance but was voluntarily declared," and if "immediately paid would have had no relation to the wages due the next year." *Jacksonville Paper*, 167 F.2d at 449. Additionally, as Defendant notes, "*Jacksonville Paper* was written over 20 years before the percentage bonus regulation on which GEICO relies took effect. 29 CFR Part 778, 33 FR 986-01 (1968)." (Reply 7.) Plaintiff's first hypothetical is therefore inapposite.

In Plaintiff's second hypothetical, a hotel pays an annual bonus to "incentiviz[e] continued employment and reduc[e] overtime obligations." (Opp'n 10.) The "annual bonus" is "a 100% bonus on January's earnings (an extra $3000), but only if the employee works through December." (*Id.* (emphasis in original).) Plaintiff argues that "[i]f GEICO's interpretation is the correct one, the hotel could exempt this bonus from the regular rate merely because it is based, in part, on a percentage of January's earnings." (*Id.*) However, this hypothetical bonus is also not instructive because, unlike Defendant's PSP bonus, the hypothetical's annual bonus only includes the hypothetical employee's January earnings and therefore is not based upon a percentage of the employee's total earnings.

///

13

17-cv-0672-JLS-WVG

Given the foregoing, the Court concludes that on these facts Defendant's PSP bonus was a proper percentage bonus under Section 778.210; Defendant's requirement that Plaintiff remain employed until the payout date of the nondiscretionary PSP cash bonus to receive her bonus payout does not change this conclusion. Therefore, Defendant properly excluded the PSP bonus from Plaintiff's regular rate of pay when calculating Plaintiff's overtime pay.

### B. *Plaintiff's First through Seventh Causes of Actions*

As previously stated, the threshold issue in each of Plaintiff's causes of action is whether, by excluding the PSP bonus when calculating Plaintiff's regular rate of pay to determine overtime pay, Defendant violated the California Labor Code and the FLSA. *See* Cal. Lab. Code § 1194 (permitting "any employee receiving less than . . . the legal overtime compensation applicable to the employee . . . to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation . . . ."); *id.* §§ 201, 202 (awarding immediate payment of all earned and unpaid wages upon discharge, layoff, or resignation); *id.* § 203 (penalizing employers for failure to pay all earned and unpaid wages to a discharged or resigned employee within required time period); *id.* § 204 (requiring "all wages earned for labor in excess of the normal work period" to be paid by the next pay period); *id.* § 226 (requiring employers to furnish to employees "an accurate itemized statement in writing showing [nine items, including] . . . all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee"); *id.* § 2698, *et seq.* (awarding civil penalties for violations of the foregoing California Labor Code Sections); Cal. Bus. & Prof. Code § 17200, *et seq.* (authorizing injunctive, declaratory, and/or equitable relief for California Labor Code violations so as to prevent and remedy unfair business practices); 29 U.S.C. § 216(b) (awarding unpaid wages, attorney fees, and costs, plus interest, for FLSA violations). Given the Court's preceding analysis and determination that Plaintiff fails to demonstrate any such plausible violation, *supra* Section I.A, Plaintiff's first through seventh causes of action necessarily also fail.

### C. Plaintiff's Eighth Cause of Action: Declaratory Judgment

Plaintiff's final cause of action is for declaratory judgment. Plaintiff seeks a declaratory judgment that Defendant's PSP bonuses were "not excludable from the regular rate of pay" as valid percentage bonuses and that Defendant's administration of its PSP bonus resulted in "underpayment of overtime wages." (MTD 19–20.) As above, Defendant argues that Plaintiff's third cause of action "is wholly derivative of her causes of action for unpaid wages and cannot survive their dismissal." (MTD Notice 2.)

A district court cannot grant declaratory relief unless there is an "actual controversy" within the meaning of the Declaratory Judgment Act. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941) ("[T]he District Court is without power to grant declaratory relief unless . . . a[n actual] controversy exists."). Furthermore, Courts regularly deny requests for declaratory relief when they are duplicative of other claims—"[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009) (finding plaintiff's declaratory relief claim duplicative and unnecessary because it was "entirely commensurate with the relief sought through [plaintiff's] other causes of action"); *see also Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-CV-01140-H (BLM), 2009 WL 3214321, at *5 (S.D. Cal. Sept. 29, 2009) (finding the plaintiffs' declaratory relief claim "duplicative and unnecessary" because the relief sought was the same as the plaintiffs' other causes of action); *see also Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1220 (S.D. Cal. 2012) (dismissing the plaintiffs' claim for declaratory relief because it was "based upon the same allegations supporting their other causes of action").

Here, Plaintiff's declaratory relief claim is duplicative of Plaintiff's other claims—i.e., there is an adequate remedy at law for each violation encompassed by Plaintiff's

declaratory relief request. Moreover, because Plaintiff's other causes of action fail to state a claim, Plaintiff has not demonstrated the requisite "substantial controversy" for declaratory judgment. *See Chan v. Chancelor*, 09-CV-1839 AJB (CAB), 2011 WL 5914263, at *6 (S.D. Cal. Nov. 28, 2011) (dismissing the plaintiffs' declaratory relief claim both because the other causes of action failed to state a claim and because the claim was duplicative of the other claims and therefore unnecessary). Accordingly, Plaintiff's cause of action for declaratory relief also fails.

### D.     *Plaintiff's Trust Arguments*

Plaintiff raises arguments regarding payment of the bonus into a trust fund for the first time in its Opposition. (Opp'n 3, 14–15.) Specifically, Plaintiff states that the bonus was "not all cash" and that "[p]art of the bonus is in a form of a contribution to the employee's company-managed trust fund." (*Id.* at 3.) Contributions into the trust fund are allegedly also subject to "conditions subsequent" and "do not vest at all for two years, and do not invest in full for six years." (*Id.*) Additionally, "[i]f the employee fails to remain with GEICO until the amounts vest, GEICO takes that money back." (*Id.*) Defendant correctly notes that Plaintiff's FAC fails to mention any trust contributions in connection with the PSP bonus. (Reply 9.) Accordingly, at this time the Court does not consider the plausibility of Plaintiff's claims in light of its arguments regarding trust contributions. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original)).

## CONCLUSION

Because the PSP bonus was a nondiscretionary bonus and paid as a percentage of Plaintiff's straight time and overtime wages earned during the previous calendar year, Defendant properly excluded the PSP bonus from Plaintiff's regular rate of pay when calculating Plaintiff's overtime pay. And because this threshold issue governs all of Plaintiff's causes of action, Plaintiff's claims are **DISMISSED**. Nonetheless—in light of

Plaintiff's newly raised trust-vesting argument—the Court will not yet dismiss Plaintiff's claims with prejudice. *Polich v. Burlington N. Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." (citing *Kelson v. City of Springfield*, 767 F.2d 651, 653 (9th Cir. 1985))). Accordingly, this dismissal is **WITHOUT PREJUDICE** and Plaintiff is **GRANTED LEAVE TO FILE** an amended Complaint, if any, on or before fourteen days from the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: July 11, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge