**NICHOLAS & TOMASEVIC, LLP**
  Craig M. Nicholas  (SBN 178444)
  Alex M. Tomasevic (SBN 245598)
  Shaun A. Markley (SBN 291875)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:   (619) 325-0492
Facsimile:    (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**GLICK LAW GROUP, P.C.**
  Noam Glick (SBN 251582)
  Kelsey McCarthy (SBN 305372)
225 Broadway, Suite 2100
San Diego, California 92101
Telephone:   (619) 382-3400
Facsimile:    (619) 615-2193
Email: noam@glicklawgroup.com
Email: kelsey@glicklawgroup.com

Attorneys for Plaintiff
Marisha Russell

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISHA RUSSELL, individually and on behalf of others similarly situated,<br><br>                                  Plaintiffs,<br><br>       vs.<br><br>GOVERNMENT EMPLOYEES INSURACE COMPANY, a Maryland corporation; and DOES 2-20, inclusive<br><br>                                  Defendants. | Case No.:  3:17-cv-00672-JLS-WVG<br><br>**SECOND AMENDED COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT FOR:**<br><br>1.  **FAILURE TO PAY OVERTIME WAGES;**<br><br>2.  **FAILURE TO PAY WAGES FOR ALL HOURS WORKED;**<br><br>3.  **FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS;**<br><br>4.  **FAILURE TO PAY ALL WAGES DUE AND OWING (WAIT TIME PENALTIES);**<br><br>5.  **ENFORCEMENT OF THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE SECTIONS 2698 *ET SEQ.*;** |



6. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.*; AND**

7. **VIOLATION OF THE FAIR LABOR STANDARDS ACT**

**DEMAND FOR JURY TRIAL**

**Judge**:    Hon. Janis L. Sammartino
**Magistrate**:  Hon. William V. Gallo

**Removal Date**: April 3, 2017

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

Plaintiff Marisha Russell ("Plaintiff"), on behalf of herself and similarly-aggrieved current and former employees, alleges the following upon information and belief based upon investigation of counsel, except as to her own acts, which she alleges upon personal knowledge:

# I.    INTRODUCTION

1.    This is a hybrid collective action, under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), for violation of federal law, class action, under Federal Rule of Civil Procedure ("FRCP") Rule 23, for violations of California law, and representative action, under Cal. Labor Code § 2698 et seq., for violations of California's Private Attorney General Act ("PAGA").

2.    Defendant Government Employees Insurance Company (hereinafter "Geico" or "Defendant") is a national insurance provider who employs Plaintiff and other similarly situated employees as non-exempt, hourly employees.

3.    Plaintiff and other similarly situated employees work overtime for Geico. They also receive regular bonuses in two forms: (1) cash payments; and (2) contributions to trust accounts. An employee earns a cash bonus by being employed at the start of a calendar year and remaining employed until a payout date in February of the following calendar year. If the employee leaves during this 14-month period, the cash bonus is forfeited. An employee earns a trust contribution by remaining employed over many years as the trust contributions "vest." If the employee leaves Geico, unvested portions of the trust contributions are forfeited.

4.    This case is about Geico's failure to properly allocate the cash and trust contribution bonuses into its employees' "regular rate" for the purpose of calculating overtime.

5. Where an employer provides a lump sum bonus, it must apportion the bonus back over the workweeks it was earned and recompute overtime accordingly. This can involve a somewhat technical process of dividing the bonus over the weeks it was earned, assessing overtime hours worked each week, and applying an

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

increased rate to those hours ("technical apportionment"). As an alternative to technical apportionment, companies may reallocate a bonus in a logically analogous way – providing a "percentage bonus." A percentage bonus is calculated as a percent of the employee's total pay over the earnings period, both straight time and overtime. By calculating the bonus in this way, the employer increases both the regular rate of pay and the bonus pay by the same percentage, satisfying the need to allocate and recompute overtime. As phrased by this Court in its Order Granting Defendant's Motion to Dismiss, "a 'percentage bonus' provides employees—in one payment—with both a bonus and accrued overtime stemming from what would otherwise derive from the bonus-based recomputation." Doc. 19, pg. 7:20-22.

6. Thus, the central aim of the rules governing inclusion of a bonus in the regular rate for the purpose of calculating overtime is apportionment ***over the earnings period*** to recompute overtime due. This is true under technical apportionment and the percentage bonus method.

7. Geico contends it satisfies the percentage bonus method by basing its bonuses on a percentage of an employee's income over a 12-month calendar year. However, Geico's cash bonuses are earned over a 14-month period and trust contribution bonuses are earned, in full, over 6 years. As such, Geico's system fails to apportion over the full earnings period. Geico's broader interpretation of an acceptable percentage bonus – one that is based on *any* time period's wages – fails to satisfy apportionment, the central aim of including bonuses in the regular rate. For this simple reason, Geico's plan must fail.

8. Plaintiff, on behalf of herself and all others similarly situated, brings this action seeking recovery of overtime wages, unlawfully retained wages that were earned and unpaid, civil penalties, liquidated damages, declaratory relief, reasonable attorneys' fees and costs, and all other relief that the Court deems just, reasonable, and proper.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

## II.  JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(4) because these claims seek redress for violations of Plaintiff's federal civil and statutory rights.

10.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because these claims are so closely related to Plaintiff's federal wage and hour claims that they form parts of the same case or controversy under Article III of the United States Constitution.

11.    This Court has jurisdiction over Defendant because it conducts substantial business in California and San Diego County. Defendant intentionally availed itself to the laws and markets of California through operation of its business in California and San Diego County.

12.    Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial District.

13.    PAGA authorizes aggrieved employees to sue directly for various civil penalties under the California Labor Code.

14.    Plaintiff timely provided detailed written notice of her claims, on or around November 16, 2015, to the California Labor Workforce Development Agency, and to Defendants, pursuant to California Labor Code section 2699.3(a). Plaintiff provided notice by certified mail of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

## III.  PARTIES

15.     Plaintiff Marisha Russell is, and at all relevant times was, a citizen of San Diego, California.  Plaintiff worked for Defendant in Poway, California as a customer service representative from April 2011 to December 2014.
/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

16.    Upon information and belief, Defendant Geico is incorporated in Maryland, with its principal place of business in Chevy Chase, Maryland and was, at all times relevant to this Second Amended Complaint ("SAC"), engaged in commercial transactions throughout the United States, including within San Diego County and the State of California.

## IV.    REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION ALLEGATIONS

### A.    Collective Action Allegations

17.    Plaintiff brings her PAGA claims on behalf of herself and on a representative basis on behalf of all other aggrieved employees as allowed under PAGA.

18.    Plaintiff brings her FLSA claims as a collective action under 29 U.S.C. 216(b) on behalf of herself and all other employees similarly situated, further defined as:

> All people, nationwide, who were, are, or will be employed by Defendant as non-exempt employees at any time from the date three-years prior to the original filing of the Complaint through the present. (the "Collective Action Group")

19.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of The Collective Action Group may be expanded or narrowed by amendment or an amended complaint. Specifically excluded from the proposed Collective Action Group are Defendant, its officers and directors, any Judge assigned to this action, and any member of the Judge's immediate family.

20.    To the extent equitable tolling operates to toll claims by any of the aforementioned Collective Action Groups against Defendant, the applicable statute of limitations and period for calculating damages should be adjusted accordingly.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

21.    Plaintiff brings this lawsuit on behalf of herself individually and the Collective Action Groups as a collective action. Defendant is engaged in communication, business, and transmission throughout the United States and are, therefore, engaged in commerce within the meaning of 29 U.S.C. § 203(b).

22.    Federal labor law mandates that all employees must be compensated for all hours worked, including all straight time compensation and overtime compensation, unless they are properly exempted from those requirements. See 29 C.F.R. § 778.223 and 29 C.F.R. § 778.315.

23.    Defendant willfully engaged in a widespread pattern and practice of violating these provisions by failing to pay required overtime wages.

24.    This action meets all prerequisites for the maintenance of a collective action under the FLSA. Specifically:

(a) The persons who comprise the respective Collective Action Groups exceed 40 persons (per group) and are therefore so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b) Nearly all factual, legal, statutory, declaratory, and injunctive relief issues that are raised in this Complaint are common to the respective Collective Action Groups and will apply uniformly to every member of the respective collective action groups;

(c) The claims of the representative Plaintiff are typical of the claims of each member of the respective Collective Action Groups. Plaintiff, like all other members of the Collective Action Group, was subject to Defendant's illegal practices of failing to properly calculate overtime pay. Plaintiff sustained economic injury as a result of Defendant's employment practices. Plaintiff and the members of the Collective Action Group were and are similarly or identically harmed by the same unlawful, deceptive, unfair, and pervasive pattern of misconduct engaged in by Defendant; and

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

(d) The representative Plaintiff will fairly and adequately represent and protect the interest of the Collective Action Group, and has retained attorneys who are competent and experienced in similar litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Collective Action Groups that make collective treatment inappropriate. Counsel for the Collective Action Groups will vigorously assert the claims of the entire respective Collective Action Group.

**B.    Class Action Allegations**

25.    Plaintiffs also bring claims under California Law as a class action pursuant to FRCP Rule 23 on behalf of the California Class defined as:

> All California citizens, who were, are, or will be employed by Defendant as non-exempt employees at any time from the date four-years prior to the original filing of the Complaint through the present (the "California Class").

26.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or an amended complaint. Specifically excluded from the proposed Class are Defendant, its officers and directors, any Judge assigned to this action, and any member of the Judge's immediate family.

27.    To the extent equitable tolling operates to toll claims by the respective California Classes against Defendant, the applicable statute of limitations or recovery period should be adjusted accordingly.

28.    Defendants, as a matter of corporate policy, practice, and procedure, and in violation of the applicable California Labor Code, IWC Wage Order Requirements, and other applicable provisions of California law, intentionally, knowingly, and willfully refused to pay all compensation owed to Plaintiff and the other members of the California Class for their overtime hours worked, failed to provide accurate itemized wage statements, and failed to pay all wages when due.

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

29.    This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in FRCP Rule 23.

30.    **Numerosity.** The members of the Class are so numerous that joinder of all Class members would be impractical, if not impossible.  The precise number of Class members is unknown to Plaintiff. However, the identities of the members of the Class are readily ascertainable through Defendant's records.  The true number of Class members is known by Defendant, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. Similarly, the members of The Collective Action group are so numerous that treatment of that group as a collective action under 29 U.S.C. 216(b) is also appropriate.

31.    ***Existence and Predominance of Common Questions of Law and Fact***.  There exists a well-defined community of interest in the questions of law and fact presented by this controversy.  Common questions of law and fact exist as to all members of the California Class and predominate over any questions affecting only individual class members.   These common legal and factual questions include, but are not limited to, the following:

    a.  how bonuses were calculated and applied;

    b.  whether class members were adequately paid overtime wages;

    c.  whether Defendant provided class members accurate itemized wage statements;

    d.  whether Defendant paid class members all wages due at separation of employment;

    e.  whether Defendant violated the UCL by unlawfully and unfairly failing to pay their employees all overtime wages, among other things;

    f.  the proper measure of damages sustained by the class; and

    g.  whether Defendant should be permanently enjoined from continuing its illegal business or labor practices.

Similarly, questions of law and fact exist as to all members of the California Class and predominate over any questions affecting only individual group members, such that treatment of that group as a collective action under 29 U.S.C. 216(b) is also appropriate.

32.   ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class and The Collective Action Group.  Plaintiff, like other members of the California Class and Collective Action Group, was not properly compensated for her overtime hours and denied her right to receive her wages upon termination pursuant to California and federal law.  The treatment of Plaintiff resulted from the implementation of Defendant's uniform and common business practices, which affected all class members in the same or similar way.  Plaintiff also challenges Defendant's business practices under legal theories common to all class members.

33.   ***Ascertainability***.  The class is ascertainable. Defendant maintains records from which the Court can ascertain the identity, job title, employment dates, and other information of each of Defendant's employees who were uniformly subjected to Defendant's unlawful behavior. The records of Defendant will identify which employees failed to receive the compensation to which they were entitled, who did not receive adequate wage statements, and who were not paid all wages when due.

34.   ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the California Class and the Collective Action Group. Plaintiff has retained counsel highly experienced in wage and hour class and collective action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class or the Collective Action Group.

35.   ***Superiority***.  A class or collective action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual class members is

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for employees, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if the employees could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action and collective action devices provide the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and present no unusual management difficulties under the circumstances here.

36.    In the alternative, employees may also be treated as a class or as part of a collective action because: the prosecution of separate actions by individuals would create a risk of inconsistent or varying adjudication that would establish incompatible standards of conduct for Defendant.

37.    The prosecution of separate actions by individuals would also create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other employees not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

38.    Defendant acted or refused to act on grounds generally applicable to the California Class and the Collective Action Group thereby making appropriate final declaratory and/or injunctive relief.

39.    Unless stated otherwise, the claims asserted here are applicable to all individuals who worked for or at Defendant's offices as non-exempt employees receiving bonuses during the statutory period.

40.    Damages may be calculated, in part, from the employee information maintained in Defendant's records, so that the cost of administering a recovery can

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

be minimized.  However, the precise amount of damages available to Plaintiff is not a barrier to class certification or collective treatment.

41.     Plaintiff seeks a preliminary and permanent injunction and equitable relief on grounds generally applicable to the California Class and the Collective Action Group, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to make restitution to Plaintiff and similarly-situated employees, where appropriate.

42.     Plaintiff seeks a declaratory judgment that Defendant's practices constitute a failure to pay all owed overtime wages, as a matter of law.

43.     Unless a class is certified or collective treatment implemented, Defendant will retain monies received as a result of their wrongful conduct that was taken or withheld from Plaintiff and similarly-situated employees.  Unless a class-wide or group-wide injunction is issued, Defendant will continue to commit the violations alleged, and its employees and the general public will continue to be misled.

## V.     FACTUAL ALLEGATIONS

### A.     Overview of the Overtime Requirement

#### a. Overtime Must Be Paid at One and One Half the "Regular Rate"

44.     Under both California and federal law, a company must pay overtime at not less than one and one-half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); Cal. Labor Code § 510.

45.     The federal and state legislatures define "regular rate" very broadly "to include *all remuneration* for employment paid to, or on behalf of, the employee, [unless specifically excluded]."  *See* 29 U.S.C. § 207(e) (emphasis added).[1] Unless the remuneration falls within a limited statutory exception, it "must be added into the total compensation received by the employee before his regular hourly rate of

---

[1] *See also* California's Division of Labor Standards Enforcement ("DLSE") Enforcement Policies and Interpretations Manual (2002), § 49.1.2 (adopting the definition of "regular rate" from the FLSA under the California Labor Code).

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

pay is determined [for purposes of determining overtime compensation due]." 29 C.F.R. § 778.200(c) ("all remuneration for employment paid to employees which does not fall within one of [] seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined").

46.    Courts "interpret[] [exceptions to inclusion in the regular rate] *narrowly* against the employer, and *the employer* bears the burden of showing that an exception applies." *White v. Publix Super Markets, Inc.*, No. 3:14-CV-1189, 2015 WL 4949837, at *2 (M.D. Tenn. Aug. 19, 2015) (emphasis added). Moreover, courts interpret wage laws "liberally to apply to the furthest reaches consistent with congressional direction" because "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 296, 105 S. Ct. 1953, 1959 (1985).

> b. *Lump Sum Bonuses Are Part of the Regular Rate and Must Be Apportioned Back Over the Workweeks They Were Earned*

47.    Except for certain types of discretionary bonuses not relevant here, lump sum bonuses fall within the broadly defined remuneration included in the regular rate. 29 C.F.R. § 778.209 ("CFR 209") explains: "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation." This is often referred to as apportioning the bonus or recomputing the regular rate to account for the bonus. The ultimate goal is for the employee's regular rate (and corresponding overtime compensation) to accurately reflect total remuneration, including the bonus awarded, over the relevant time period.

48.    The legislature recognizes that many bonus plans defer payment of the bonus over periods longer than a specific workweek or pay period. *See* CFR 209.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

CFR 209 explains how to allocate the bonus and recompute overtime for such bonuses (aka "technical apportionment"):

> [Once] the amount of the bonus can be ascertained, it **must be apportioned back over the workweeks of the period *during which it may be said to have been earned*.** The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week. (Emphasis added.)

As explained further in the Department of Labor Field Operations Handbook, Modernization Revision 729, published 11/17/16 ("DOL FOH"), Section 32c03(b) this apportioning occurs "so that the employee will receive an additional amount of compensation for each week in which he/she worked overtime during the period [over which the bonus may be said to have been earned]."

### c. The Percentage Bonus as a Logical Equivalent to Recomputation

49.    Likely in recognition of the burdensome nature of technical apportionment, the legislature adopted an alternate, but logically equivalent method of providing a bonus that satisfies the overtime obligation – the percentage bonus. *See* 29 C.F.R. § 778.210 ("CFR 210").

50.    The "percentage bonus rule", CFR 210, notes that there may be no need to recalculate the regular rate of pay "in some instances" when the bonus is a simple percentage of total wages that, by design, provides simultaneous and sufficient payment of regular wages and all overtime. The rational is that "[i]f an employer grants a bonus to [an] employee as a percentage of total pay, the employer increased both the regular rate of pay and the bonus pay by the same percentage." *Chavez v. Converse, Inc.*, No. 15-CV-03746 NC, 2016 WL 4398374, at *2 (N.D. Cal. Aug. 18, 2016). When done properly, the *bona fide* or "true" percentage bonus naturally and automatically provides sufficient overtime compensation consistent with the reallocation that would result in CFR 209. As this Court has previously recognized, "a **'percentage bonus' provides**

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

employees—in one payment—with both a bonus and accrued overtime stemming from **what would otherwise derive from the bonus-based recomputation**." Doc. 19, pg. 7:20-22 (emphasis added).

51.    In addressing "distribution of bonuses as a percentage of total earnings," the DOL FOH, Section 32c03(b) states that "**if** the additional money to be paid is a true bonus, it may be distributed in proportion to the total earnings (exclusive of the bonus) of each participating employee properly computed to include time and one-half for the overtime hours or in proportion to the boosted hours worked **during the bonus period**." CFR 209 makes clear the "bonus period" is the "**period during which [the bonus] may be said to have been earned**."

52.    29 C.F.R. § 778.503 ("Section 503") addresses "pseudo percentage bonuses" and tells us what a "true bonus based on a percentage" – which need not be factored further into overtime – really is and is not:

> As explained in [CFR] § 778.210 of this part, a true bonus based on a percentage of total wages—both straight time and overtime wages—satisfies the Act's overtime requirements, if it is **paid unconditionally**. . . . 29 C.F.R. § 778.503 (emphasis added).

53.    CFR Sections 209, 210, and 503 show the distinction between a "true percentage bonus" – one paid *un*conditionally and intended to reallocate overtime compensation over the period during which the bonus was earned; and a "pseudo percentage bonus" – one paid conditionally and used to accomplish other end, such as incentivizing future conduct by the employee or deferring owed compensation.

54.    An FLSA Opinion Letter from January 23, 1997 further highlights the related nature of CFR 209 and 210. It addresses the proper time period for the allocation of a percentage bonus as follows:

> The other question arises from a proposal to pay the employees a lump sum computed by multiplying the employees' pay for an unspecified period by a fixed percentage. You indicate that **the payments would include the same percentage of both the employees' straight time earnings and any overtime compensation paid to the employees** *for the period in question*. We believe that such a payment would constitute a percentage of

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

total earnings bonus excluded from computation of the employees' regular rate of pay for overtime purposes pursuant to 29 C.F.R. 778.210. Payment of a bonus and simultaneous payment of the overtime compensation due on the bonus satisfies the overtime requirements of the FLSA and no recomputation is required. (1997 WL 998000.)

55.    In responding to a hypothetical raised in Plaintiff's Opposition to Defendant's Motion to Dismiss, this Court held that a percentage bonus must mirror the period for which it is earned. In Plaintiff's hypothetical, a company pays an employee a bonus contingent on finishing the entire calendar year, however, the bonus is based solely on a percentage of January's earnings. The court emphasized that this hypothetical is not a valid percentage bonus because it "only includes . . . January earnings and therefore is not based upon a percentage of the employee's _total_ earnings." Doc. 19, pg. 13:19-27 (emphasis in original). As explained more fully below, Geico's bonuses are no different. The cash bonus is based on a percentage of 12 months' wages (January 1 through December 31 of year one) but is earned over 14 months (January 1 in year one through February of year two). The trust contributions are a more extreme example. These are earned over many years as the amounts vest to the employee, however, the amount is based on a percentage of an initial year's wages.

## B.    Geico's Bonuses

### a.    Calculation of Geico's Bonuses

56.    Each year, Geico provides company contributions, or bonuses, to its employees as additional remuneration. These contributions are "designed to encourage employee savings" and benefit employees "upon their retirement, disability, or termination." _See_ Geico's Profit Sharing Plan ("PSP"), attached to this SAC as Exhibit A (setting forth the manner in which its company contributions are calculated and paid to employees).

57.    Geico calculates bonus awards as follows: At the discretion of its board, Geico designates a portion of its net profits from the calendar year as the

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

total amount of company contributions to the bonus pool. Exh. A at ¶ 5. Geico then divides the total bonus pool among each of its "Planning Centers" based on the Planning Centers' earnings over the course of the year and rank (as assigned by Geico's senior management). *Id.* Next, Geico calculates an individual employee's share of their Planning Center's distribution based *in part* on a percentage of the employee's *calendar year earnings*, including regular (straight time) and overtime wages. *See* Exh. A at ¶ 5.

58.    Geico pays out its bonuses in two forms: (1) cash; and (2) trust fund contributions. *See* Exhibit B, an example of a profit sharing award split between cash and trust contributions. An employee earns a cash bonus by being employed at the start of a calendar year and remaining employed until a payout date in February of the following calendar year. If the employee leaves during this roughly 14 month period, the cash bonus is forfeited. An employee earns a trust contribution by remaining employed over many years as the trust contributions "vest." If the employee leaves Geico, unvested portions of the trust contributions are forfeited. *See* Exh. A at ¶¶ 5 and 10.

### b. Geico's Cash Bonuses

59.    Under the PSP, an employee earns a cash bonus from Geico where the employee is employed at the start of a calendar year and remains employed through the payout date, typically in February of the following calendar year.[2] Thus, an individual employed as of January 1, 2015 receives a cash bonus by remaining employed as of the February 2016 payout date.

60.    As noted above, the cash bonus is based, in part, on a percentage of the employee's calendar year earnings (12 months; January – December). However,

---

[2] Geico will no doubt assert, as it has in the past, that the additional time into the following calendar year is insignificant or perhaps necessary in order for Geico to determine and fund payment. However, Geico cannot deny the simple truth of the matter – that the bonus remains contingent from January 1 of year one through the February year two payout date. The payment is just as contingent in January of year one as it is in January of year two and, as such, is earned in both periods.

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

the cash bonus is not based on a percentage of the employee's earnings over the period for which the bonus is earned (roughly 14 months; January through the February payout date the following calendar year).

61.     As such, these cash bonuses are not "apportioned back over the workweeks of the period during which it may be said to have been **earned**" as required by CFR 209. (Emphasis added.) For this reason, the cash bonuses cannot satisfy the logically intertwined CFR 210 as bona fide percentage bonuses.  The cash bonuses do not "provide[] employees—in one payment—with both a bonus and accrued overtime stemming from what would otherwise derive from the bonus-based recomputation." Doc. 19, pg. 7:20-22 (emphasis added). Likewise, this is not a situation where "an employer grants a bonus to [an] employee **as a percentage of total pay**, [such that] the employer increased both the regular rate of pay and the bonus pay by the same percentage." *Chavez v. Converse, Inc.*, No. 15-CV-03746 NC, 2016 WL 4398374, at *2 (N.D. Cal. Aug. 18, 2016) (emphasis added).

62.     Using the cash payment in Exhibit B as an example, Geico granted Plaintiff a 10.9% (20.9 minus 10 attributable to the trust account) cash bonus based on her January 1 through December 31, 2012 eligible earnings (which includes straight time and overtime). However, Plaintiff earned this cash bonus by remaining employed from January 1, 2012 through February 22, 2013. Thus, the $3,125.21 bonus does not reflect 10.9% of Plaintiff's eligible earnings "over the workweeks of the period during which [the bonus] may be said to have been earned." (CFR 209.) It does not include a percentage of earnings from January 1, 2013 through February 22, 2013. Geico cannot deny that Plaintiff continued to earn the bonus during this period of time in 2013.

63.     Assume instead that Geico paid a $5,000 non-percentage based bonus for the same time period, January 1, 2012 through February 22, 2013. Geico could not seriously contend that this bonus only needs to be apportioned back over the workweeks in calendar year 2012. This would violate the clear tenants of CFR 209.

Yet, Geico contends it can do exactly this in the context of a percentage bonus while remaining faithful to CFR 210. Geico is wrong. Such an allocation defies this Court's articulate statement of the percentage bonus rule: "a 'percentage bonus' [must] provide employees—in one payment—with both a bonus and accrued overtime **stemming from what would otherwise derive from the bonus-based recomputation**." Doc. 19, pg. 7:20-22 (emphasis added).

### c.  Geico's Trust Fund Bonuses

64.    Geico deposits its trust fund contribution bonuses to its employees' trust accounts each year. Exh. A at ¶ 5.2. However, following deposit, these contributions remain contingent on continued employment with Geico and do not vest at all for two years and in full for six years. *See Id.* at ¶ 10.1. If the employee fails to remain with Geico until the amounts vest, unvested amounts are forfeited. *Id.*   A portion (but not all) of Plaintiff's trust contribution vested during her employment at Geico.

65.    As an example, a $5,000 deposit to an employee's trust account at the end of 2014 would have no value to the employee until the end of 2016. The full $5,000 would not vest until the end of 2020. If the employee fails to remain employed until the end of 2020, all, or at least the unvested portion of the contribution, is lost.

66.    For the same reasons mentioned above, these bonuses do not satisfy the technical apportionment or the percentage bonus rule. Following deposit in the trust account, these bonuses are earned incrementally over the workweeks of many years. However, Geico does not apportion the payments back over these workweeks in calculating overtime. Likewise, it does not pay these bonuses as a percentage of earnings over the years during which the bonuses are effectively earned. Rather, Geico pays the trust bonuses as a product of the year of deposit's earnings. This is not in compliance with the FLSA or California law. *See* CFR 209 and 210.

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

67.    A DOL Opinion Letter addresses a helpful and analogous allocation of stock option benefits in U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on the FLSA, 1999 WL 1002365 at *2. The DOL analyzes how to allocate profits earned from the exercise of stock option purchase rights. The rights were provided to all employees employed on a given date who remain employed three months after the program is announced. From the end of the three-month period until the termination of the stock option grant (unspecified), the employees may exercise the stock option purchase and capture the increased value of the stock. The DOL looks at two hypothetical exercises of the stock options and the impact on the respective employees' regular rate:

a.    Employee 1 exercises the stock option rights immediately at the end of the three-month period (13 weeks). The profit from the exercise of the rights is "attributed to the previous 13 workweeks."

b.    Employee 2 exercises the stock option rights after 3 years (156 weeks). The profit from the exercise of the rights is "attributed to the previous 104 workweeks [two years], ending with the workweek in which he exercised his option." (This shortened period is due to the applicable statute of limitations, Section 6(a) of the Portal-to-Portal Act of 1947, which only goes back two years). *Id.*

68.    Geico's trust contributions should receive the same treatment as the stock options in the DOL's hypothetical. Once the earnings vest (at 2, 4, and 6 years), they should be attributed to the previous workweeks over this waiting (or earning) period with a cap of two trailing years in light of the applicable statute of limitations. Notwithstanding that a portion of Plaintiff's bonus-based trust contribution vested over her employment, Geico made no such allocation.

### d. Trust Fund Bonuses Cannot Be Exempt as Percentage Bonuses

69.    Independent of the above analysis, Geico's trust contribution bonuses must be included in the regular rate for another reason: trust contributions inclusion or exclusion from the regular rate is governed exclusively by 29 UCS 207(e)(4)

1   ("Section 207"). As such they are not eligible for consideration under the

2   percentage bonus rule.

3       70.    29 C.F.R. § 778.214 states that Section 207(e)(4) "**governs the status**

4   **for regular rate purposes of** *any* **contribution**s made by an employer **pursuant**

5   **to a plan for providing the described benefits** [retirement, life, etc.]. This is **true**

6   **irrespective of any other features** the plan may have. . . . [T]he profit-sharing

7   payments **may be excluded** from the regular rate **if** they **meet** the requirements of

8   the Profit–Sharing Regulations, **part 549** of this chapter. . . ." (emphasis added));

9   and *see e.g.* Opinion Letter Fair Labor Standards Act (FLSA), 1993 WL 901169, at

10  *1 (relying on CFR 214 to conclude Benefit Contribution payments "not

11  excludable under §207(e)(4) . . . must be included in the regular rate of pay for

12  FLSA overtime compensation purposes.").

13      71.    In short, Section 207 and related Regulations exclude *bona fide*

14  Benefit Contributions from the regular rate, however, non-*bona fide* Benefit

15  Contributions must be included. GEICO does not contend its trust deposits, or

16  Benefit Contributions, are *bona fide* or exempt under Section 207(e)(4) and related

17  Regulations. Nor could it. [3]

18      72.    Rather, GEICO seeks to avoid inclusion of its trust contributions

19  based on their "percentage bonus" feature. This clearly ignores CFR 214 which

20  explains Section 207 governs Benefit Contributions "irrespective of any other

21  features the plan may have." 29 C.F.R. § 778.214. To conclude otherwise not only

22  [3] 29 C.F.R. § 549.1, setting forth the requirements for a bona fide profit sharing plan prohibits
    various features from being included in such a plan. Subpart (g) states "the right of an
23  employee to receive his share **[may] not [be] made dependent upon his continuing in the
    employ of the employer** after the period for which the determination of profits has been
24  made." (Emphasis added.) Geico conditions the right to receive the trust contributions upon
    continued employment for 6 years (for full vesting).
25
    Furthermore, 29 C.F.R. § 549.2 prohibits plans from qualifying as bona fide "[i]f the employer's
26  contributions or allocations to the fund or trust to be distributed to the employees are **based on
    factors other than profits such as hours of work, production, efficiency, sales or savings
27  in cost**." (Emphasis added.) Geico distributes its PSP bonuses to its "Planning Centers" based
    on the Planning Centers' earnings over the course of the year and rank. As such, the plan
28  violates Section 549.2.

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

violates CFR 214's express language but would also "render meaningless" Section 207's domain over Benefit Contributions.

## VI.    FIRST CAUSE OF ACTION
### By Plaintiff Against Defendant for Failure to Pay Overtime Wages
### (Class Action Under FRCP 23)

73.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74.    Plaintiff brings this claim individually and on behalf of the California Class.

75.    Plaintiff and the other California Class members were sometimes required to, and did, work in excess of eight hours per workday and/or 40 hours per workweek.

76.    As explained in more detail above, Defendant did not properly compensate Plaintiff and the other Class members for the overtime hours they worked. Namely, Defendant failed to properly allocate the cash and trust bonuses over the workweeks for which these bonuses were earned. As such, Defendant failed to properly pay overtime wages due.

77.    As a direct and proximate result of Defendant's failure to pay Plaintiff and the other Class members the correct overtime wages, Plaintiff and the other California Class members are entitled to recover their unpaid overtime, interest, attorneys' fees and costs of suit pursuant to Labor Code section 1194.

## VII.    SECOND CAUSE OF ACTION
### By Plaintiff on Behalf of the California Class Against Defendant for Failure to Timely Pay Wages for All Hours Worked
### (Class Action Under FRCP 23)

78.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

79.    Plaintiff brings this claim individually and on behalf of the California Class.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

80.    California Labor Code section 1194 requires employers, like Defendant, to pay all employees minimum wages for all hours worked. (Cal. Labor Code, § 1194 ["(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."].)

81.    Defendant failed to correctly calculate their employees' regular rates of pay when calculating overtime.    Specifically, Defendant failed to properly include trust and cash bonuses earned by employees, when calculating their regular rate of pay, which meant that California Class was never paid for all overtime hours worked.

82.    Labor Code section 200 *et seq*. provides that employees are entitled to wages and compensation for work performed, and provides a private right of action for failure to pay wages and compensation for said work performed.  Labor Code section 1194 entitles a plaintiff to recover unpaid wages.  Labor Code section 1194.2 entitles a plaintiff to recover liquidated damages in an equal amount for unpaid minimum wages.

83.    During the class period, Labor Code section 204 applied to Defendant's employment of Plaintiff and the rest of the Class.  At all times relevant hereto, Labor Code section 204 provided that all wages earned by any employee, such as a member of the California Class, in any employment between the first and fifteenth days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth and twenty-sixth day of the month during which the work was performed.  Furthermore, at all times relevant hereto, Labor Code section 204 provided that all wages earned by any employee, such as a member of the Class, in any employment between the

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

sixteenth and last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first and tenth day of the following month.

84.    As alleged above, Defendant failed to pay Plaintiff and the rest of the class all of their wages earned and all compensation owed and therefore violated Labor Code section 204.   Accordingly, Plaintiff and the rest of the Class are entitled to recover from Defendant all damages, penalties and other remedies available for violation of Labor Code section 204.

## VIII.  THIRD CAUSE OF ACTION
**By Plaintiff on Behalf of the California Class Against Defendant for Failure to Provide Accurate Itemized Wage Statements**
**(Class Action Under FRCP 23)**

85.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86.    Plaintiff brings this claim individually and on behalf of the California Class.

87.    California Labor Code section 226(a) requires Defendant to furnish each employee, at the time wages are paid, a statement containing an accurate, dated, itemized account, in legible writing, showing, among other things, the gross and net wages earned, the total number of hours the employee worked, all deductions, the dates of the pay period, the employee's name and identification number, the employer's name and address, and all applicable hourly rates in effect during the time period.

88.    Geico failed and continues to fail to provide these required wage statements to California Class members.

89.     Defendant provided Plaintiff and members of the CaliforniaClass with pay stubs. However, these pay stubs failed to correctly state the applicable overtime rate.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

90.    As such, Plaintiff and other Class members are entitled to payment from Defendant of the greater of actual damages or $50 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000. Pursuant to Labor Code section 226(e). California Class members, including Plaintiff, are entitled to and seek reasonable attorney's fees and costs incurred and all applicable penalties.

## IX.    FOURTH CAUSE OF ACTION
**By Plaintiff on Behalf of the California Class Against Defendant for Failure to Pay all Wages Due and Owing Upon Termination**
**(Class Action Under FRCP 23)**

91.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

92.    Plaintiff brings this claim individually and on behalf of the California Class.

93.    At the time of termination, Plaintiff and members of the California Class were owed wages for overtime work performed.  Defendant failed to pay these wages upon termination of Plaintiff and members of the Class.

94.    During the Class period, Labor Code sections 201 and 202 applied to Defendant's employment of Plaintiff and the rest of the Class.

95.    At all times relevant hereto, Labor Code section 201 provided that, if an employer such as Defendant discharged an employee such as a member of the Class, the wages earned and unpaid at the time of discharge were due and payable immediately.  Furthermore, Labor Code section 202 provided that, if an employee such as a member of the Class, voluntarily leaves his or her employment, the wages earned and unpaid must be paid by the employer within 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to leave, in which case the employee is entitled to receive his or her wages immediately at the time of quitting.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

96.     During the class period, Labor Code section 203 provided that, if an employer such as Defendant failed to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, but the wages shall not continue for more than 30 days (commonly referred to as "Waiting Time Penalties").

97.     Accordingly, Plaintiff and the members of the Class who were discharged or who quit during the class period are entitled to Waiting Time Penalties.

## X.     FIFTH CAUSE OF ACTION
### By Plaintiff Against Defendant Enforcement of PAGA, California Labor Code §§ 2698, *et seq*.
### (Representative Action Under PAGA)

98.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99.     At all times relevant, Labor Code section 2698 was applicable to Plaintiff's employment by Defendant.

100.    Plaintiff has satisfied the jurisdictional prerequisites for an action under Labor Code section 2699 *et seq*. ("PAGA") in that on November 12, 2015, she gave notice to the Labor Commissioner, by certified mail, that Defendant is in violation of certain sections of the Labor Code, including Labor Code sections 201, 202, 203, 204, 226(a) and 1194, as well as the facts and theories to support the alleged violations.  Plaintiffs also provided notice to Defendant by certified mail on November 16, 2015.

101.    The Labor Commissioner provided no notice within 60 calendar days of the postmark date of Plaintiff's notice that it intended to investigate the alleged violations.   Therefore, Plaintiff has satisfied the requirements of Labor Code section 2699.3 and may recover civil penalties for Defendant's violations of California Labor Code sections 201, 202, 203, 204, 226(a), and 1194.

102.   As set forth more fully above, Defendant violated Labor Code sections 201, 202, 203, and 1194.

103.   Pursuant to Labor Code sections 2699(f) and (g), Plaintiff is entitled to recover civil penalties in the amount of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation, plus costs and attorneys' fees for Defendant's violations of 201, 202, 203, 204, 226(a), and 1194.

## XI.   SIXTH CAUSE OF ACTION
### By Plaintiff on Behalf of the California Class Against Defendant for Violation of California Business & Professions Code §§ 17200, *et seq*.

104.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

105.   Plaintiff brings this claim individually and on behalf of the California Class.

106.   Defendant is a "person" as that term is defined under California Business & Professions Code section 17021

107.   California's UCL defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

(Cal. Business & Professions Code, §17203.)

108.   Defendant engaged in unlawful business practices by violating California law, including but not limited to provisions of California's Labor Code,

including but not limited to, sections 201, 202, 203, 204, 226, and 1194, for which this Court should issue declaratory, injunctive and/or other equitable relief, pursuant to California Business and Professions Code section 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

109.   Defendant's violations of the Employment Laws and Regulations, as alleged here, include, but are not limited to: (a) failing to pay Class members for all hours worked; (b) failing to pay Class members adequate overtime compensation for all applicable hours worked; and (c) failing to provide accurate itemized wage statements.

110.   The business acts and practices of Defendant in violating the California Labor Code and IWC Wage Orders, as described above, constitute an unlawful, unfair and/or fraudulent business practice in violation of the UCL.

111.   Defendant's knowing failure to adopt policies in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Defendant's competitors, engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice, as set forth in California Business and Professions Code sections 17200-17208.

112.   Plaintiff seeks, on her own behalf and on behalf of the Class, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendant by means of the unfair practices complained of.

113.   Plaintiff seeks, on her own behalf and on behalf of the Class, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of.

114.   The restitution includes the equivalent of all unpaid wages for hours worked whether it be straight-time or overtime, including interest thereon.

115.   The acts complained of occurred within the last four years preceding the filing of the complaint in this action.

/ / /

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

116.    Plaintiff is informed and believes and on that basis alleges that at all times mentioned Defendant has engaged in unlawful, deceptive and unfair business practices, including depriving Plaintiff and members of the Class of the minimum working condition standards due to them under the California's Labor Law as specifically described above.

## XII.   SEVENTH CAUSE OF ACTION
**By Plaintiff on Behalf of the Collective Action Group
Against Defendant for Violation of The FLSA
(Collective Action Under the FLSA)**

117.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

118.   Plaintiff brings this claim individually and collectively on behalf of the Collective Action Group.

119.   The FLSA, at 29 U.S.C. 207, provides in relevant part that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

120.   Defendant's cash and trust bonuses do not fall within any recognized exception to Section 207's requirements.   Such onuses should have been added as part of the "regular rate" of pay and fell within the federal definition of "regular rate" of pay. (*Cf.* 29 U.S.C. 207(e).)

121.   Plaintiff and The Collective Action Group often worked over 40 hours in a work week, thereby entitling them to overtime under the FLSA.

122.   However, Defendant knowingly, willfully, and intentionally, failed to compensate Plaintiffs and The Collective Action Group all overtime wages due and owed to them under the FLSA's overtime requirements.

123.   Because of Defendant's willful violations of the FLSA, Plaintiff and The Collective Action Group are entitled to recover from Defendant, their unpaid

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

wages, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, pursuant to the FLSA, all in an amount to be determined at trial. (*See* 29 U.S.C. section 216(b).)

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on the behalf of the members of the Class and the Collective Action Group, prays for judgment as follows:

1.  For an order certifying the proposed California;

2.  For an order allowing this matter to proceed as a collective action on behalf of The Collective Action Group;

3.  For consequential damages according to proof;

4.  For statutory damages and penalties according to proof;

5.  For a declaration that Defendants violated the rights of Plaintiff and other Collective Action Group members under the Labor Code and the FLSA;

6.  For liquidated damages according to proof pursuant to Labor Code section 1194.2 and the FLSA;

7.  For waiting time wages according to proof pursuant to Labor Code section 203;

8.  That Defendants be ordered to show cause why it should not be enjoined and ordered to comply with the applicable Labor Code and FLSA provisions related to employee classification, minimum wage compensation, overtime compensation, report time pay, and record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendants and their agents, servants, and employees related thereto;

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

9.  For restitution to Plaintiff and other similarly effected members of the Class of all funds unlawfully acquired by Defendants by means of any acts or practices declared by this Court to be violations of the mandate established by the UCL;

10. For an injunction to prohibit Defendants to engage in the unfair business practices complained of;

11. For an injunction requiring Defendants to give notice to persons to whom restitution is owing of the means by which to file for restitution;

12. For actual damages or statutory penalties according to proof as set forth in California Labor Code section 226 related to record keeping;

13. That Defendants be ordered to show cause why they should not be enjoined and ordered to comply with the applicable California laws related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendants and their agents, servants, and employees related thereto;

14. For interest and costs;

15. For reasonable attorneys' fees, expenses and costs as provided by California Labor Code sections 226 or 1194, California Code of Civil Procedure section 1021.5,    PAGA, and the FLSA;

*[Rest of page intentionally left blank.]*

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT

16. For all civil penalties available under PAGA; and

17. For such other and further relief the court may deem just and proper.

Respectfully submitted:

Dated:  July 21, 2017                    **GLICK LAW GROUP, P.C.**

                                         By:    */s/ Noam Glick*
                                                Noam Glick (SBN 251582)
                                                Kelsey McCarthy (SBN 305372)
                                                225 Broadway, Suite 2100
                                                San Diego, California 92101
                                                Telephone:   (619) 382-3400
                                                Facsimile:   (619) 615-2193
                                                Email: noam@glicklawgroup.com
                                                Email: kelsey@glicklawgroup.com

                                                Attorneys for Plaintiffs

SECOND AMENDED COLLECTIVE, CLASS, AND
REPRESENTATIVE ACTION COMPLAINT