UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISHA RUSSELL,<br><br>  Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al.,<br><br>  Defendants. | Case No.: 17-CV-672 JLS (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 23) |

Presently before the Court is Defendant Government Employees Insurance Company's ("GEICO") Motion to Dismiss Plaintiff's Second Amended Complaint, ("MTD," ECF No. 8-1). Also before the Court are Plaintiff's Opposition to Defendant's Motion to Dismiss, ("Opp'n," ECF No. 24), and Defendant's Reply in Support of, ("Reply," ECF No. 25), its Motion to Dismiss Plaintiff's Second Amended Complaint. The Court vacated the hearing and took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 26.) Having considered the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiff Marisha Russell asserts that Defendant GEICO, her former employer, retained overtime wages and other benefits in violation of the California Labor Code, the

California Business and Professions Code Section 17200 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.* ("FLSA"). (Second Am. Compl. ("SAC"), ECF No. 20.) Plaintiff brings her claims both individually and on behalf of all other allegedly aggrieved employees under California's Private Attorneys General Act ("PAGA") and as a collective action under 29 U.S.C. § 216(b). (*See id.*)

Defendant, a national insurance provider, employed Plaintiff in a non-exempt, hourly clerical position from April 18, 2011 through December 1, 2014. (*Id.* ¶ 15.) During her employment, Plaintiff was at times required to work overtime hours in excess of eight hours per workday and/or forty hours per week. (*Id.* ¶ 75.) Plaintiff received compensation in two forms: (1) an hourly wage and (2) an annual bonus through Defendant's Profit Sharing Plan (the "PSP"). (*Id.* ¶ 56; *see also* Ex. A, ECF No. 20-1.)

The terms of the PSP identify—among other things—how Defendant makes contributions to the PSP fund and how Defendant calculates and allocates the amount of each employee's annual PSP bonus from the fund. (*See* Ex. A., ¶¶ 5.1, 5.2.) Defendant's companies' contributions to the fund come from each calendar year's ("Plan Year") net profits and the contribution amount is "determined by the Board in its sole discretion." (*Id.* ¶ 5.1(a).) Defendant's companies then allocate funds to each of their "Planning Centers" (i.e., organizational units within the companies) based on rankings determined by a numerical value "assigned annually to each Planning Center by the President of the Corporation acting on the advice of the Corporation's senior management." (*Id.* ¶ 5.2.) The total bonus amount that each Planning Center receives is based on a ratio of "(i) each Planning Center's [ranking] multiplied by the total earnings of eligible employees in that Planning Center to (ii) the sum of the products of each Planning Center's [ranking] and the total earnings of all eligible participants in such Planning Center." (*Id.*) Defendant then apportions an annual bonus to each eligible employee within a Planning Center as "a proportionate share of the Planning Center's bonus money, calculated as the ratio of (i) the employee's earnings during the Plan Year to (ii) the total earnings of all eligible employees within the Planning Center." (*Id.*)

The employee's earnings in the above apportionment include "all regular or basic pay, overtime pay, and shift differential earned during the Plan Year, and all bonuses earned during the Plan Year except the profit sharing payments themselves." (*Id.* ¶ 1.9.) In order for an employee to receive the PSP bonus, the employee is "required to remain[] employed until a payout date in February of the following calendar years." (SAC ¶ 58; Ex. A ¶ 5.1.) "If the employees leaves during this roughly 14 month period, the cash bonus is forfeited." (SAC ¶ 58.)

Plaintiff contends that Defendant's administration of its compensation mechanisms is legally flawed and thus filed this action alleging claims that Defendant (1) failed to pay overtime wages pursuant to California Labor Code section 1194; (2) failed to timely pay wages for all hours worked pursuant to California Labor Code sections 204 and 1194; (3) failed to provide accurate itemized wage statements pursuant to California Labor Code section 226; (4) failed to pay all wages due and owed upon termination pursuant to California Labor Code sections 201, 202, and 203; (5) violated California Labor Code sections 201, 202, 203, 204, 226, and 1194, entitling Plaintiff to recover civil penalties pursuant to California' Private Attorneys General Act, Labor Code section 2698, *et seq.*; (6) violated California Business and Professions Code section 17200, *et seq.*; and (7) violated relevant provisions of the FLSA, primarily 29 U.S.C. § 207. (SAC ¶¶ 73–123.)

Plaintiff originally filed this action on December 23, 2015—seeking only state-law–based relief—in San Diego Superior Court. Plaintiff amended her complaint on February 16, 2017, adding new claims under the FLSA and Defendant removed to this Court on the basis of federal question jurisdiction. (ECF No. 1.) The Court granted Defendant's previous motion to dismiss, ("Prior Order," ECF No. 19), and Plaintiff filed the present Second Amended Complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint

states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655,

658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Both the FLSA and California law require that an employee be compensated with overtime pay "at a rate not less than one and one-half times" the employee's regular rate for hours worked in excess of forty in a week. 29 U.S.C. § 207(a); Cal. Lab. Code § 510 (articulating same and additionally requiring overtime pay for "work in excess of eight hours in one workday"). However, absent controlling or conflicting California law, "California follows the federal standard for purposes of determining, under the Labor Code, what constitutes an employee's regular pay subject to an overtime rate." *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 242 n.14 (2007) (citing *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 902 (2005)).

Plaintiff alleges that both the cash bonus and trust contribution are not in compliance with the FLSA. Because California law follows the FLSA for "what constitutes an employee's regular pay subject to an overtime rate," *see id.*, the Court must determine whether Defendant's PSP violated the FLSA. Plaintiff advances two potential FLSA violations. First, Plaintiff argues the FLSA required Defendant to include its cash bonus when calculating Plaintiff's regular rate of pay to determine overtime pay. Second, Plaintiff argues that Defendant's trust fund contributions, like the cash bonus, do not pay as a percentage of earnings over the years during which the bonus is earned. (*See generally* Opp'n.)

**I.   Whether Defendant's Cash Bonus Is a Valid Percentage Bonus**

Under the FLSA, an employee's "regular rate" includes "all remuneration for employment paid to . . . the employee," unless the remuneration falls under one of eight statutory exceptions. 29 U.S.C. § 207(e). Generally, discretionary bonuses and payments made by an employer pursuant to profit-sharing plans fall under excludable payments. *See* 29 C.F.R. § 778.208. When an employer includes discretionary bonuses in the regular rate of pay, the bonus must be apportioned back over the workweeks of the period during which

5

they may said to have been earned. *Harris v. Best Buy Stores, L.P.*, No. 15-cv-657-HSG, 2016 WL 4073327, at *3 (N.D. Cal. Aug. 1, 2016) (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, (Jan. 23, 1997), 1997 WL 998000, at *1; and citing 29 C.F.R. § 778.209).

"Alternatively, an employer can calculate overtime compensation without relying on the regular rate: § 778.210 permits employers to satisfy FLSA's overtime compensation requirements by calculating the bonus as a "percentage of total earnings" by multiplying the employee's pay by the same fixed percentage of both the employee's straight-time earnings and overtime earnings." *Id.* at *4 (citing 29 C.F.R. § 778.210). Bonuses paid under section 778.210 must also satisfy the requirements of sections 778.502[1] and 778.503. Under section 778.503, bonuses that are paid unconditionally meet the FLSA's requirements.

The Court previously determined that Defendant's cash bonuses fell under 29 C.F.R. § 778.210 and not under § 778.209. (Prior Order 10 ("[T]he bonus was paid as a percentage of Plaintiff's straight-time and overtime wages earned during the previous calendar year.").) Additionally, the Court found Defendant's bonus met 29 C.F.R. § 778.503's requirements. (*Id.* ("[T]he PSP bonus is nondiscretionary.").) The Court went on to hold that "the difference in the length of time between the Plan Year (January of Year 1 through December 31 of the same year) and the PSP bonus payout date (January of Year 1 through February of Year 2) also does not disqualify the PSP bonus as a bona fide percentage bonus under the language of Sections 778.210 and 778.503." (*Id.* at 10 n.4.)

Plaintiff argues that Defendant's cash bonuses are not "apportioned back over the workweeks of the period during which [they] may be said to have been earned." (Opp'n 12 (citing 29 C.F.R. § 778.209).) "For this reason, the Cash Payments cannot satisfy the logically intertwined CFR 210 as bona fide percentage bonuses." (*Id.*) This argument

---

[1] Section 778.502 applies when an employer labels a payment a "bonus," but the bonus is merely a portion of regular wages to which an employee is entitled. Plaintiff makes no such allegation here and the Court does not consider its applicability.

ignores the distinction between sections 778.209 and 778.210. Section 778.210 is an alternative to section 778.209 and Defendant need only fit under one of the two sections. The Court previously determined Defendant met the requirements of section 778.210. Plaintiff provides no persuasive authority to depart from the Court's prior finding.

Plaintiff next argues that Defendant's cash bonuses are not based on a percentage of its employees' total earnings because the bonuses are a percentage of twelve months wages, but employees are required to "earn" the bonuses over fourteen months. (Opp'n 14.) Plaintiff cites a Department of Labor ("DOL") opinion letter that states in relevant part:

> The other question arises from a proposal to pay the employees a lump sum computed by multiplying the employees' pay for an unspecified period by a fixed percentage. You indicate that the payments would include the same percentage of both the employees' straight time earnings and any overtime compensation paid to the employees for the period in question. We believe that such a payment would constitute a percentage of total earnings bonus excluded from computation of the employees' regular rate of pay for overtime purposes pursuant to 29 C.F.R. 778.210. Payment of a bonus and simultaneous payment of the overtime compensation due on the bonus satisfies the overtime requirements of the FLSA and no recomputation is required.

(*Id.* (emphasis omitted) (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 23, 1997), 1997 WL 998000, at *1).) Plaintiff argues that the "period in question" here is not the calendar year, but rather fourteen months because Defendant's employees must work until February of year two to receive the cash bonus. (*See id.*)

Defendant counters that this Court's Prior Order rejected that reasoning when it found that the difference between the Plan Year (January 1st of year one to December 31st of year one) and the PSP bonus payout date (January 1st of year one to February of year two) does not disqualify the cash bonus under sections 778.210 and 778.503. (Reply 6 (citing Prior Order 10 n.4).)

The Court agrees with Defendant. Plaintiff provides no authority rebutting the Court's prior holding. The opinion letter does not counsel a different result. Plaintiff's

interpretation of the letter hinges on the phrase "payments would include the same percentage of both the employees' straight time earnings and any overtime compensation paid to the employees for *the period in question*." The period in question here is the twelve months of year one. Plaintiff's argument that she must earn the bonus over fourteen months overlooks the fact that an employee working in January and February of year two is earning a bonus for year two.

This position is similar to an August 2005 DOL opinion letter.[2] The Department was asked whether, under a section 778.210 percentage bonus plan, the employer needed to include the "bonus paid for a preceding calendar year when computing bonus amount due for the current year, even if the bonus paid for the preceding year was actually paid in the current year." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, (Aug. 26, 2005), 2005 WL 3308593, at *1. The Department opined that the employer does not have to include the bonus paid for a preceding calendar year. It went on to explain "the bonus for year [one] is calculated based on year [one] earnings, even though it is paid in [year two]. Thus, the year [two] bonus may be said to have been 'earned' in year [one]." *Id.* None of Plaintiff's cited authorities prohibit an employer, like Defendant, from requiring its employees to wait until February of year two to receive cash bonuses calculated for the preceding calendar year.

In sum, this Court's Prior Order determined Defendant's plan met the requirements of 29 C.F.R. §§ 778.210 and 778.503. Plaintiff's arguments cover no new ground and do not require a different conclusion. Therefore, the Court determines Defendant's cash bonus payment does not need to be reapportioned because it does not fall under 29 C.F.R. § 778.209. Accordingly, Defendant's cash bonus does not violate the FLSA.

///

///

---

[2] In the Ninth Circuit, DOL opinion letters, although "not binding on the court if . . . plainly erroneous or . . . inconsistent with the regulations they interpret," are otherwise "normally entitled to a high degree of deference." *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998).

## II. Whether Defendant's Trust Contributions are Exempt from Regular Rate

Next, Plaintiff argues that Defendant's trust contributions are not exempt from the regular rate. (Opp'n 15.) 29 U.S.C. § 207(e)(4) provides that an employee's regular rate of pay shall not include "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." 29 C.F.R. §§ 778.214 and 778.215 interpret 29 U.S.C. § 207(e)(4). 29 C.F.R. § 778.214(b) provides that "[p]lans for providing benefits of the kinds described in section 7(e)(4) are referred to herein as 'benefit plans.'" The regulation goes on to state:

> Where such a plan or trust is combined in a single program (whether in one or more documents) with a plan or trust for providing profit-sharing payments to employees, the profit-sharing payments may be excluded from the regular rate if they meet the requirements of the Profit–Sharing Regulations, part 549 of this chapter, and the contributions made by the employer for providing the benefits described in section 7(e)(4) of the Act may be excluded from the regular rate if they meet the tests set forth in § 778.215. Advance approval by the Department of Labor is not required

*Id.* Section 778.215 and part 549 both allow exclusion from the regular rate; however, the respective requirements differ greatly. Thus, whether Defendant's benefit plan falls under the profit-sharing regulations of part 549 or under § 778.215 matters to the outcome here.

### A. Whether Defendant's PSP Must Comply with Part 549, Section 778.214, or Both

Plaintiff argues that Defendant's plan must comply with both sections 778.214 and 778.215. (Opp'n 17.) To this end, Plaintiff cites a 1973 DOL opinion letter that reads, in relevant part, "[w]here a plan is designed primarily for the payment of death, disability and retirement benefits, the requirements of 29 CFR 778.214 and 778.215 must be fully met in order for an employer's contributions to the plan to qualify for exclusion from the regular rate of pay under section 7(e)(4)." (*Id.* (emphasis omitted) (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Nov. 26, 1973), 1973 WL 36847, at *1).) From this

9

17-CV-672 JLS (WVG)

premise, Plaintiff argues that Defendant's plan must meet the profit-sharing requirements of part 549—referenced in § 778.214—<u>and</u> the benefit plan requirements of § 778.215. (*See id.* at 17.)

Defendant argues that section 778.214 describes two different types of payments, each with its own requirements. According to Defendant, profit-sharing payments fall under part 549, but an employer can exclude contributions to a benefit plan under 778.215. (Reply 8.) Defendant points out that section 778.214 further states, "[i]t should be emphasized that it is the employer's contributions made pursuant to the benefit plan that is excluded from or included in the regular rate according to whether or not the requirements set forth in § 778.215 are met." (*Id.* (emphasis omitted) (quoting § 778.214(c)).) Before turning to whether Defendant's plan meets the regulatory requirements, the Court must first determine which regulatory section applies to Defendant's PSP.

The parties agree that Defendant's PSP must meet section 778.214 and 778.215. They diverge on whether Defendant's PSP must also meet the profit-sharing requirements in part 549—in addition to meeting the requirements in section 778.215. Defendant argues that it only need meet § 778.215 and not part 549. The FLSA supports Defendant's position—the FLSA clearly distinguishes between profit-sharing plans, *see* 29 U.S.C. § 207(e)(3), and employer retirement contributions, *see* § 207(e)(4). Moreover, Plaintiff agrees that only section 207(e)(4) applies to Defendant's PSP.[3] (Opp'n 18.) Further, a plain reading of the regulations distinguishes between profit-sharing and benefit plans. § 778.214 begins by describing "benefit plans" and then goes on to state:

> Where such a plan or trust is combined in a single program . . . with a plan or trust for profit-sharing payments to employees, the profit-sharing payments may be excluded from the regular rate if

---

[3] The Court notes that some elements of the PSP suggest it is a profit-sharing plan. For example, Defendant's trust contributions come from net profits. (Ex. A, at 24.) This fact alone does not remove the PSP from section 207(e)(4). As long as the plan is primarily designed to provide benefits to employees upon retirement or disability, "[i]t makes no difference that such a plan is financed out of profits." Dep't of Labor, Wage & Hour Div., Opinion Letter (May 9, 1972), 1972 WL 34907, at *1. Therefore, the Court agrees that 29 U.S.C. § 207(e)(4) controls the outcome here.

> they meet the requirements of the Profit-Sharing Regulations and the contributions made by the employer . . . may be excluded . . . if they meet . . .§ 778.215.

29 C.F.R. § 778.214(b). The phrase "such a plan or trust" in the above quoted regulation refers back to a "benefit plan" because "benefit plan is the only antecedent plan discussed in the text of the regulation. According to the regulation, a benefit plan can be combined, with a profit-sharing plan, into one plan—that is, an employer may combine two separate and distinct plan types. But, each plan type must meet the requirements of its respective regulatory section; profit-sharing refers to part 549 and benefit plan refers to § 778.215. Plaintiff provides no reason why Defendant's PSP must comply with section 778.214 <u>and</u> section 778.215 <u>and</u> part 549 to be excluded from the regular rate. Section 778.214(c) confirms Defendant's interpretation: [i]t should be emphasized that it is the employer's contribution made pursuant to the benefit plan that is excluded from or included in the regular rate according to whether or not the requirements set forth in § 778.215 are met." Thus, Defendant need only meet sections 778.214 and 778.215 or section 778.214 and part 549, but not both. Moreover, the parties agree the PSP is not a profit-sharing plan and, therefore, Defendant need only satisfy sections 778.214 and 778.215 to exclude the contributions from the regular rate.

### *B. Whether Defendant's PSP Complies with 29 C.F.R. § 778.215*

Section 778.215(a) provides five requirements an employer's contribution plan must meet to exclude the contributions from the regular rate.[4] Plaintiff argues that Defendant's

---

[4] Also relevant, section 778.215(b) presumes that a benefit plan approved by the Internal Revenue Service, as meeting section 401(a) of the Internal Revenue Code, therefore meets the conditions specified in section 778.215, paragraphs (a)(1), (4), and (5). *See* § 778.215(b). Defendant argues that the IRS issued to Defendant a Determination Letter finding Defendant's plan to be a qualified plan under section 401 and requests the Court judicially notice this document. (MTD 6 n.3) Plaintiff does not oppose the request, but instead argues the IRS determination letter does not support Defendant's positions. (Opp'n 21.)

Generally, courts may judicially notice "record and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)). Generally, courts take

plan does not meet the requirements of § 778.215 for two reasons. First, § 778.215(a)(4) requires contributions to be "paid irrevocably." Plaintiff argues that Defendant's contributions are not irrevocable because the payments are subject to a vesting schedule. (Opp'n 20.) Second, § 778.215(a)(3) generally requires trust benefits be determined on an actuarial basis or by a definite formula. Plaintiff contends Defendant's trust contributions do not follow either requirement. (*Id.*)

*1. Section 778.215(a)(4)*

Plaintiff argues that Defendant's PSP does not meet 29 C.F.R. § 778.215(a)(4) because the PSP's vesting requirement is expressly contingent and revocable. (Opp'n 18.) Plaintiff goes on to state that an employee earns a trust contribution by remaining employed with Defendant and those contributions incrementally vest. (*Id.*) If an employee leaves Defendant, the unvested portions of the trust contribution are forfeited. Plaintiff concludes that the forfeiture demonstrates the contributions are revocable. (*Id.*)

Defendant counters that the Internal Revenue Code states that contributions are irrevocable so long as they cannot be diverted "to a use other than for the exclusive benefit of the employees." (Reply 7 (quoting *Cmty. Servs., Inc. v. United States*, 422 F.2d 1353, 1359 (Ct. Cl. 1970)).) Defendant contends that its PSP incorporates by reference section 401(a) of the Revenue Code and when a plan incorporates said section by reference it "conclusively establishes that it would [be] a violation of the contract for [the employer], at anytime, to have diverted the trust funds to its own use." (*Id.* (alterations in original) (quoting *Cmty. Servs.*, 422 F.2d at 1359).)

The Court finds the regulation instructive here. Section 778.215(a)(4) requires an

---

judicial notice of *publicly* available government documents. *See, e.g.*, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (collecting cases).
 Here, Defendant has not demonstrated its Request for Judicial Notice is a publicly available government document. Moreover, the Court finds that it need not rely on the IRS Determination Letter in reaching its overall conclusion. Therefore, the Court **DENIES** Defendant's Request for Judicial Notice, (ECF No. 23-2).

employer's contributions to be paid irrevocably to a trustee. The Court need not look for a definition for irrevocable beyond the regulation's plain text because it goes on to state "[t]he trust or fund must be set up in such a way that in no event will the employer be able to recapture any of the contributions paid in nor in any way divert the funds to his own use or benefit." 29 C.F.R. § 778.215(a)(4). Here, Plaintiff contends that the PSP's forfeiture provision, contained in paragraph 10.4, means that unvested funds are revocable. (*See* Ex. A, at 36–37.) Under Plaintiff's theory, those forfeited funds would then return to Defendant for its own use or benefit—such a circumstance would be clearly prohibited under section 778.215(a)(4).

Yet, the PSP explicitly details how forfeited funds are allocated. First, forfeited amounts are transferred to Defendant's money market fund and used to pay recordkeeping and administrative fees. (Ex. A, at 37.) Any forfeited amounts not used to pay administrative expenses are then reallocated among Participant Accounts according to Paragraph 5.3. (*Id.*) Paragraph 5.3 provides:

> To the extent any forfeitures arising under Paragraph 10.4 for a Plan Year are to be reallocated among Participant Accounts, such forfeiture amounts will be reallocated to the Account of any Participant who is an Eligible Participant, as defined under Paragraph 5.2, as of the last day of the Plan Year in which the forfeiture occurs pursuant to Paragraph 10.4(a).

(*Id.* at 25.) Thus, forfeitures do not return to Defendant's control, but rather are allocated for administrative fees or reallocated to the employees remaining in the company.[5] For this reason, Defendant's contributions are irrevocable, as defined by section 778.215(a)(4).

///

///

---

[5] The PSP further states: "All contributions when made to the Fund and all property and funds of the Fund, including income from investments and from all other sources, will be retained for the exclusive benefit of Participants and their Beneficiaries and will be used to pay benefits provided hereunder." (Ex. A, at 56.) This language further confirms the employer contributions are for the PSP participants only and not Defendant's benefit or control.

*2. Section 778.215(a)(3)*

Next, Plaintiff argues that Defendant's PSP fails section 778.215(a)(3)'s requirement of either benefits determined on an actuarial basis or by a definite formula to determine the employer's contribution amount. (Opp'n 20.) Plaintiff points out that the PSP states that Defendant "will contribute to the Fund from [its] net profit such amount as will be determined by the Board in its sole discretion." (*Id.* (alteration in original) (quoting Ex. A, at 24).) According to Plaintiff, Defendant's Board could elect not to make a contribution or if Defendant has no net profits then employees receive no Trust contributions. (*Id.*)

Defendant contends that the PSP does, in fact, have a specific formula. (Reply 9 (citing Ex. A, 24–25).) Paragraph 5.2 of the PSP defines the allocation of company contributions and describes a ration to determine total contributions for each of Defendant's "Planning Center." (*See* Ex. A, at 24.) Defendant also contends that the regulation does not require a substantial minimum contribution. Section 778.215(a)(3)(iv) provides that the requirements of paragraph (a)(3)(ii) and (iii), i.e., the requirement for a formula, "may be met by a formula which requires a specific and substantial minimum contribution and which provides that the employer may add somewhat to that amount within specified limits; provided, however, that there is a reasonable relationship between the specified minimum and maximum contributions." (Reply 10 (quoting 29 C.F.R. § 778.215(a)(3)(iv)).)

The Court agrees with Defendant. Paragraph 5.2 describes the PSP's allocation formula. The formula is definite because quantifies each variable, i.e., a Planning Center's ranking and the earnings of eligible participants and describes those variables' relation to each other. Further, the PSP's formula does not have a minimum contribution, nor is the existence of a minimum mandated by the regulations. The considerations in § 778.215(a)(3)(iv) are triggered only when the "formula requires a specific and substantial minimum contribution." Therefore, Plaintiff fails to establish Defendant's PSP violates

section 778.215.[6] As such, Defendant may exclude its trust contributions from the regular rate.

## III. Plaintiff's Remaining Causes of Action

As previously stated, the threshold issue in each of Plaintiff's causes of action is whether Defendant violated the FLSA. The purported FLSA violation provides the bases for Plaintiff's remaining state law claims. *See* Cal. Lab. Code § 1194 (permitting "any employee receiving less than . . . the legal overtime compensation applicable to the employee . . . to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation."); *id.* §§ 201, 202 (awarding immediate payment of all earned and unpaid wages upon discharge, layoff, or resignation); *id.* § 203 (penalizing employers for failure to pay all earned and unpaid wages to a discharged or resigned employee within required time period); *id.* § 204 (requiring "all wages earned for labor in excess of the normal work period" to be paid by the next pay period); *id.* § 226 (requiring employers to furnish to employees "an accurate itemized statement in writing showing [nine items, including] . . . all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee"); *id.* § 2698, *et seq.* (awarding civil penalties for violations of the foregoing California Labor Code Sections); Cal. Bus. & Prof. Code § 17200, *et seq*. (authorizing injunctive, declaratory,

---

[6] Plaintiff contends that Defendant has the burden to prove that an exception, such as 29 C.F.R. § 778.215, applies. (Opp'n 20 n.11 (citing *White v. Public Super Markets, Inc.*, No. 14-cv-1189, 2015 WL 4949837, at *2 (M.D. Tenn. Aug. 19, 2015)).) The Court notes that the PSP meets the remaining elements in § 778.215. Section 778.215(a)(1) requires a specific plan communicated to employees. Plaintiff attached that plan to her Second Amended Complaint. Section 778.215(a)(2) requires the primary purpose of the plan to "provide systematically for the payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like." This language echoes the purpose of 29 U.S.C. § 207(e)(4), which Plaintiff admits applies to Defendant's PSP. (Opp'n 18.) Finally, section 778.215(a)(5) prohibits a plan from allowing an employee to assign his benefits or receive any part of the employer's contributions in cash, with minor exceptions. Here, the PSP explicitly prohibits assignment of benefits payable under the Plan, (Ex. A, at 56), and Article VI provides that employees direct their Company contributions to an investment fund, not receivable in cash. Therefore, the Court finds Defendant's PSP meets section 778.215 in its entirety.

15

17-CV-672 JLS (WVG)

and/or equitable relief for California Labor Code violations so as to prevent and remedy unfair business practices); 29 U.S.C. § 216(b) (awarding unpaid wages, attorney fees, and costs, plus interest, for FLSA violations). Given the Court's preceding analysis and determination that Plaintiff fails to demonstrate any such plausible FLSA violation, *see supra* sections I & II, Plaintiff's first through seventh causes of action necessarily also fail.

## CONCLUSION

In sum, Plaintiff fails to state a claim for violation of the FLSA. Accordingly, she cannot state a claim for her state law and FLSA collective action causes of action, as each is pendant on an FLSA violation. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss, (ECF No. 23), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Second Amended Complaint. Additionally, the Court **DENIES** Defendant's Request for Judicial Notice, (ECF No. 23-2). The Court harbors concerns that further amendment would be futile; the factual allegations remain largely unchanged from the First Amended Complaint to the Second Amended Complaint. However, Plaintiff **SHALL FILE** an amended complaint, if any, <u>on or before fourteen (14) days from the date on which this Order is electronically docketed</u>. *Failure to file an amended complaint by this date may result in dismissal of this action with prejudice*.

**IT IS SO ORDERED.**

Dated: March 8, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge